**DEAN LLOYD, SBN 104647**
**Law Offices of Dean Lloyd**
425 Sherman Avenue, Unit 230
Palo Alto, CA 94306
Phone: (650) 328-1664
Fax: (650) 328-1666
E-mail: dlloyd.legaljaws@gmail.com

Attorney for Debtors

## UNITED STATES FEDERAL DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In Re: | **Case Number:** |
| **Rizalde Santos,** | **COMPLAINT FOR DAMAGES AND INJUCTIVE RELIEF FOR RIZALDE SANTOS FOR VIOLATION OF FEDERAL AND STATE LAW; DECLARATORY RELIEF (OFFSET); FRAUD; PREFERENTIAL TRANSFER; FRAUDULENT TRANSFER; DECLARATORY RELIEF (TORTIOUS INTERFERENCE WITH CONTRACT); QUIET TITLE** |
| Plaintiff | |
| Rizalde Santos | |
| Plaintiff | |
| vs. | |
| OCWEN LOAN SERVICING, LLC WELLS FARGO HOME MORTGAGE, LLC dba WELLS FARGO BANK NATIONAL TRUST ASSOCIATION, ASSURANT, INC., HOMEWARD RESIDENTIAL, INC., aka AMERICAN HOME MORTGAGE SERVICING, INC and AMERICAN SECURITY INSURANCE COMPANY | |
| Defendant(s) | |

RIZALDE SANTOS, the Plaintiff herein, as and for his Complaint alleges as follows:

**JURISDICTION AND VENUE**

1.      Jurisdiction of this action exists pursuant to 28 US code §1331 and 28 US code §1332, and venue is proper pursuant to 28 US code §1391(b)(2).

2.      The matter is jurisdiction based on diversity of the parties and a determination of a federal question.

**PROCEDURAL BACKGROUND**

3.      The Plaintiff, RIZALDE SANTOS, filed a Chapter 13 Bankruptcy (case #: 11-60728) on December 2, 2011. The schedules were submitted for the plan and to the Chapter 13 Trustee, Devin Durham-Burk.

4.      No creditors objected to the plan other than the Chapter 13 Trustee Devin Durham-Burke. The objection of the trustee was resolved and a chapter 13 plan was approved by the court on August 28, 2012.

5.      The chapter 13 was not subject to discharge even though all payments were made by the plaintiff.

6.      The second mortgage secured interest was satisfied by way of completion of the chapter 13 Plan (bankruptcy court case: 11-60728), where creditor, Credit Suisse Financial Corporation, failed to file opposition for a motion to value and avoidance of lien for the second trust deed. The bankruptcy court entered a default order against Credit Suisse and in favor plaintiff, Rizalde Santos, on June 28, 2012. Plaintiff, Rizalde Santos paid all payments in the chapter 13 plan and satisfied the order of the federal bankruptcy court. **(See Exhibit 5b)**

7.      On August 28, 2012 the Chapter 13 plan was confirmed and an agreement with Homeward Residential, Inc aka American Home Mortgage Servicing, Inc., was made where Homeward Residential Inc, agreed to receive monthly payments in the amount of $2,181.86 per month to include all principal and interest along with accrued arrearages for the promissory note secured by the first deed of trust . The amount of $2,181.86 was the amount agreed for the loan payment to include arrearages.  The Home owners insurance was paid directly by plaintiff even though forced insurance was placed on the plaintiff.  The beneficial interest of Homeward was apparently assigned to Wells Fargo Home Mortgage and Wells Fargo Bank   National Trust Association. The servicer was transferred from Homeward Residential, Inc. to OCWEN Loan Servicing, LLC.

8.      Plaintiff, RIZALDE SANTOS, filed for final judgment to avoid lien against secured interest holder, Credit Suisse Financial Corporation, as of January 12, 2016.

9.      Final judgment was entered after satisfaction of all chapter 13 payments.

10.     OCWEN, who currently services the first mortgage has made a claim by way of proof of claim

for pre-Petition arrearages or post-petition arrearages.

11.     Creditor servicer, OCWEN, has been served two notices by plaintiff, of a demand for accounting pursuant to 12 USC §2605(e) on August 16, 2014 and on August 5, 2015 (See attached **Exhibits 1 and 2**). A notice of transfer of servicer from Homeward Residential, Inc, fka, American Home Mortgage Servicing, LLC, was served on Plaintiff on February 13, 2013 (See attached **Exhibit 3**).

## **The Force-Placed Insurance Industry**

12.     Lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on property that secures a loan. Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower. (See proof of claim of lender attached here to as **Exhibit 4**)

13.     However, mortgage lenders and servicers have set up questionable and often illegal practices related to force-placed insurance. The lenders and servicers have entered into exclusive and collusive relationships with certain force-placed insurance providers. Assurant and its affiliate, ASIC, entered into an agreement that result in exceptional profits to both the lenders and the force-placed insurers.

14.     The arrangements comprise an extremely lucrative profit-making scheme that reaped hundreds of millions of dollars annually for its participants. There are just two insurance companies that control nearly the entire market for forced-placed policies in the country— Assurant and QBE. Assurant works through its subsidiaries, including ASIC. These companies and their affiliates enter into exclusive relationships with the major mortgage lenders and servicers to provide the policies. To maintain their exclusive relationships with these lenders, the insurers pay them unearned "kickbacks," in the form of direct payments (often disguised as reimbursements for certain costs) or in the form of a percentage of the force-placed policy premiums, offer them subsidized or discounted administrative services, and/or enter into lucrative captive reinsurance deals with them.

15.     The money to finance the force-placed insurance scheme comes from unsuspecting borrowers who are charged inflated amounts for the force-placed insurance by lenders or servicers – here, Ocwen. In many instances, borrowers are required to pay for backdated insurance coverage to cover periods during which no claims were made, or coverage that exceeds the legal requirements, and are charged additional improper fees.

16.     The Defendants' force-placed insurance scheme takes advantage of the broad discretion afforded the lenders and/or servicers in standard form mortgage agreements. The agreements typically require the borrower to carry hazard insurance sufficient to

cover the lender's interest in the property against fire and other perils. If a homeowner's "voluntary" policy lapses, the mortgage agreement allows the lender to "force place" a new policy on the property at the borrower's expense.

17.     Although force-placed insurance is designed to protect the lender's interest in the property that secures the loan and thus should not exceed that interest, lenders often purchase coverage from their exclusive insurers in excess of that required to cover their own risk.  And, as a matter of practice, the major lenders and servicers collude with the two major force-placed insurers to manipulate the force-placed insurance market, which leads to artificially inflated premiums and subsequent charges to consumers and result in premiums up to *ten times* greater than those available to the consumer in the open market. Lenders, servicers, and force-placed insurers reap these unconscionable profits entirely at the expense of the unsuspecting borrower.

18.      At a recent hearing on force-placed insurance held by the National Association of Insurance Commissioners ("NAIC"), Birny Birnbaum, the foremost expert on the force-placed insurance market, illustrated the staggering growth in profits that Defendants' schemes have reaped in recent years:[1]

19.     Assurant, a named defendant here, is one of the two major insurance companies that control virtually the entire market for force-placed insurance. Assurant held 58.6% of the nationwide market share for force-placed insurance in 2011.   Together, Assurant and QBE/Balboa, the other major insurer with a significant market share, controlled

20.     99.7% of the market in the same year, and held no less than 96.1% of the market between 2004 and 2011.  Large mortgage lenders and servicers sustain the insurers' monopoly by agreeing to purchase all force-placed insurance from the two insurers in exchange for kickbacks and other benefits. It is no surprise that these Defendants' practices have come under increased scrutiny in recent years by the government and regulators.  For example:[2]

•       On March 21, 2013, the New York Department of Financial Services' ("NYDFS"), investigation into force-placed insurance practices "produced a major settlement with the country's largest 'force-placed' insurer,

---

[1] This graph and the ones that follow were taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at: http://www.naic.org/documents/committees_c_120809_public_shearing_lender_placed_insurance_presentation_birnbaum.pdf.

[2] The Defendants' practices have also come under increased scrutiny by the courts.  This Court has already certified a Florida class against Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc. (as well as their exclusive force-placed insurance carrier, QBE) – on many of the same practices described here. *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 280 F.R.D.665 (S.D. Fla. 2012).

Assurant, Inc. . . . . [The settlement] includes restitution for homeowners who were harmed, a $14 million penalty paid to the State of New York, and industry-leading reforms that will save homeowners, taxpayers, and investors millions of dollars going forward through lower rates."[3]  Further, under the Consent Order entered Assurant and its subsidiaries (including ASIC and Standard Guaranty Ins. Co.), are prohibited from paying commissions to any servicers or entity affiliated with a servicer on force- placed insurance policies obtained by the servicer.  *See Assurant* & NYDFS Consent Order, Mar. 21, 2013, at 9.

- At NYDFS hearings on May 17, 2012 related to the force-placed insurance market, the Superintendent of Financial Services, Benjamin Lawsky, stated that the Department's initial inquiry uncovered "serious concerns and red flags" which included: 1) exponentially higher premiums, 2) extraordinarily low loss ratios, 3) lack of competition in the market, and 4) tight relationships between the banks, their subsidiaries, and insurers.  She went on to state:

  In sum when you combine [the] close and intricate web of relationships between the banks and insurance companies on the one hand, with high premiums, low loss ratios, and lack of competition on the other hand, it raises serious questions . . . .

- After the August 2012 NAIC hearings, the state regulator from Louisiana, James Donelon, referred to the force-placed insurance market as a "monopoly" and stated that stricter regulations may be needed.[4]

- On December 18, 2013, Fannie Mae issued its Servicing Guide Announcement related to force-placed insurance that, among other things, prohibits servicers from including any commissions, bonuses, or other incentive compensation in the amounts charged to borrowers for force-placed insurance and further requires that the force-placed insurance carrier cannot be an affiliated entity of the servicer.[5]

---

[3] *See Cuomo Administration Settles with Country's Largest Force-Placed Insurer, Leading Nationwide Reform Effort and Saving Homeowners, Taxpayers, and Investors Millions of Dollars*, Dep't of Fin. Servs., Mar. 21, 2013, *available at,* http://www.dfs.ny.gov/about/press2013/pr1303211.htm.

[4] *See* Z. Tracer & D. Beasley, *U.S. Regulators to Examine Forced-Place Insurance.* BLOOMBERG BUSINESSWEEK, Aug. 10, 2012, *available at,*   http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-insurance.html.

[5] *See* https://www.fanniemae.com/content/announcement/svc1327.pdf

21.     Florida has now become the epicenter for these force-placed insurance schemes. In his presentation to the NAIC, Mr. Birnbaum illustrated the astounding rise in force-placed insurance policies in Florida.

22.     Defendants' self-dealing and collusion in the force-placed insurance market has caused substantial harm to the Plaintiff. This complaint seeks to redress that harm on the Plaintiff to recover all improper costs she have incurred related to the forced placement of insurance by Ocwen, Assurant, ASIC, and Wells Fargo.

<b><u>PARTIES</u></b>

**<u>Plaintiff</u>**

23.     Plaintiff, R I Z A L D E   S A N T O S , is d o m i c i l e d   a n d   r e s i d e s  in the State of California. He is a natural person over the age of 21 and otherwise *sui juris.*

**<u>Defendants</u>**

24.     Defendant, ASSURANT, INC. is a Delaware corporation with its principal office in New York, New York.  Assurant participates in the force-placed insurance market through its trade name, Assurant Specialty Property, and its business strategy "is to pursue long term growth in lender placed homeowner's insurance . . . . The largest product line within Assurant Specialty Property is homeowners insurance consisting principally of fire and dwelling hazard insurance offered through [Assurant's] lender placed program." [6]

25.     Upon information and belief, Assurant owns the "Assurant Specialty Property" trade name and allows its subsidiaries (including ASIC) to operate their force-placed insurance business under that name.

26.     Defendant AMERICAN SECURITY INSURANCE COMPANY is a Delaware corporation and an indirect subsidiary of Assurant, writing force-placed insurance policies in all fifty states and the District of Columbia with its principal address in Atlanta, Georgia.  American Security often operates under the trade name "Assurant Specialty Property."  American Security contracts with the lenders to act as a force-placed insurance vendor.  Its duties include, but are not limited to, tracking loans in their mortgage portfolio, handling all customer service duties related to force-placed insurance, and securing force-placed insurance policies on properties when a borrower's insurance has lapsed.

27.     Upon information and belief, American Security passes much of its profits from force-placed insurance to its corporate parent, Assurant.

---

[6] *See* Assurant Form 10-K for the fiscal year ending December 31, 2011, at 5, *available at* http://.sec.gov/Archives/edgar/data/1267238/000119312315075371/d257568d10k.htm

28.    Defendant, OCWEN LOAN SERVICING, LLC, services residential mortgage loans nationwide and operates as a subsidiary of Ocwen Financial Corporation, incorporated in the state of Florida with the principle place of business located in Atlanta, Georgia. Upon information and belief, Ocwen is one of the largest third-party servicers of subprime residential mortgage loans in the United States.

29.    Defendant, WELLS FARGO HOME MORTGAGE (hereinafter "WFHM"), a division of WELLS FARGO is, and at all times relevant herein was, a South Dakota corporation licensed to do, and currently doing business in the state of California. Plaintiffs allege and believe that WFHM are the beneficiaries of the secured interest employing OCWEN as their servicer of Plaintiffs' home loan.

## FACTUAL ALLEGATIONS

30.    Permitting a lender to forcibly place insurance on a mortgaged property and charge the borrower for the cost of the premium is neither a new concept nor a term undisclosed to borrowers in mortgage agreements.   The standard form mortgage agreements serviced by Ocwen include a provision requiring the borrower to maintain hazard insurance coverage, flood insurance coverage if the property is located in a Special Flood Hazard Area as determined by the Federal Emergency Management Agency, and wind insurance on the property securing the loan, and in the event the insurance lapses, permit the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare the borrow in default.  (See attached Plaintiff's promissory note as **Exhibit 5a**)

30.    What was unknown to Plaintiff and not disclosed in the mortgage agreements is that Ocwen has exclusive arrangements with Assurant and its affiliates, including ASIC, to manipulate the force-placed insurance market and artificially inflate the premiums and then pass the improperly inflated amounts onto the Plaintiff.   The premiums are inflated to provide Ocwen and its affiliates with kickbacks in the form of "commissions" or direct payments, or to provide Ocwen with lucrative reinsurance arrangements, or to cover the cost of discounted services, as well as to include other unmerited charges.  The Plaintiff is then forced to pay the inflated amounts.

### The Force-Placed Insurance Scheme

31.    The Assurant Defendants have exclusive arrangements with Ocwen to monitor its mortgage portfolio and provide force-placed insurance.  In addition to the subsidized mortgage services they receive from the Assurant Defendants, Ocwen and/or its affiliates are kicked back a percentage  of  the  force-placed  premium  or  are  paid  direct payments  for  the  exclusive relationship  often  disguised  as  expense reimbursements. Ocwen receives additional compensation through captive reinsurance arrangements.

32.    The scheme works as follows.  Ocwen purchases master or "umbrella" insurance policies that cover its entire portfolio of mortgage loans.  In exchange, the Assurant Defendants are given the exclusive right to force insurance on property securing a loan within the

portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate.  Assurant and its affiliates monitor Ocwen's entire loan portfolio for lapses in borrowers' insurance coverage.  Once a lapse is identified, an Assurant affiliate, (in Rizalde's case, ASIC), sends notice to the borrower that insurance will be "purchased" and force-placed if the voluntary coverage is not continued.  If a lapse continues, the insurer notifies the borrower that insurance is being force-placed at his or her expense.

33.     No individualized underwriting ever takes place for the force-placed coverage. Insurance is automatically placed on the property and the premium charged to the borrower.  In many instances, the insurance lapse is not discovered for months or even years after the fact. Despite the absence of any claim or damage to the property during the period of lapse, retroactive coverage is placed on the property and the borrower is charged for the "cost" of the past premiums.

34.     Once coverage is forced on the property, Ocwen pays the insurer for the premium and then charges the borrower for the payment, which is either deducted from the borrower's mortgage escrow account or added to the balance of the borrower's loan.[7]   The borrower's escrow account is depleted irrespective of whether other escrow charges, such as property taxes, are also due and owing.

35.     After Ocwen pays the premiums to Assurant and ASIC they kick back a set percentage of that amount to Ocwen and or/ its affiliates as a "commission."  Upon information and belief, Ocwen's affiliates share a percentage of that payment with Ocwen, sometimes in the form of "soft dollar" credits.

36.     The money paid back to Ocwen and/or its affiliates is not given in exchange for any services provided by them; it is simply incentive paid to encourage further policies. In an attempt to mask the kickback as legitimate, Assurant or ASIC will often disclose to the borrower that Ocwen or its affiliates may earn commissions or income as a result of the forced placement of new coverage.  In reality, however, no work is ever done by Ocwen or the affiliates to procure insurance for that particular borrower because the coverage comes through the master or umbrella policy already in place due to the exclusive relationship in place.  As a result, no commission or income is "earned" and, in addition, neither Ocwen nor its affiliates incur any costs in relation to force-placement of insurance for any particular borrower.

37.     Under the highly profitable force-placed insurance scheme, Ocwen is incentivized to purchase and force place insurance policies with artificially inflated premiums on a borrowers' properties because the higher the cost of the insurance policy, the higher the kickback.

---

[7] On some occasions, when a borrower does not have an escrow account, an escrow account with a negative balance is created and the borrower is charged to bring the balance to zero.

38.     Assurant and Ocwen also enter into agreements for ASIC to provide servicing activities on Ocwen's entire loan portfolio at below cost.  The servicing costs are added into the force-placed premiums which are then passed on to the borrower.  The insurers are able to provide these services at below cost because of the enormous profits they make from the hyper- inflated premiums charged for force-placed insurance.  However because insurance-lapsed mortgaged property comprises only 1-2% of the lenders' total mortgage portfolio, the borrowers who pay these premiums unfairly bear the entire cost to service the entire loan portfolio.  These charges, passed on to Plaintiff , are not properly chargeable to the borrower because they are expenses associated with the servicing of all the loans and the loan servicers are already compensated for these activities.

39.     The small percentage of borrowers who are charged for force-placed insurance shoulder the costs of monitoring Ocwen's entire loan portfolio, effectively resulting in a kickback.

40.     In addition, upon information and belief, the Assurant Defendants enter into essentially riskless "captive reinsurance arrangements" with Ocwen to "reinsure" the property insurance force-placed on borrowers.

41.     Ocwen's reinsurance program, like those of other lenders, is simply a way to funnel profits, in the form of ceded premiums, to Ocwen at borrowers' expense.  While reinsurance can, and often does, serve a legitimate purpose, here it does not.  On information and belief, Ocwen and/or its affiliates enter into reinsurance agreements with the Assurant Defendants that provide that the insurer will return to Ocwen significant percentages of the premiums charged borrowers by way of ceded reinsurance premiums to Ocwen affiliates or subsidiaries.  The ceded premiums are nothing more than a kickback to Ocwen and a method for Defendants to profit from the forced placement of new coverage.  Indeed, while Ocwen and/or its affiliates purportedly provided reinsurance, they did not assume any real risk.

42.     Ocwen also overcharges borrowers by disregarding the Standard Mortgage Clause or the Lender's Loss Payable Endorsement ("LLPE") in the standard form mortgage agreement.  Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy.  Force-placed policies, however, take effect on the date of termination, and "double-cover" the property unnecessarily during the period covered by the LLPE or Standard Mortgage Clause.  This means the borrower is charged for coverage for which the lender or servicer has no exposure.

43.     The amounts charged borrowers are also inflated by the interest that accrues on the amounts owed for force-placed coverage; when Ocwen adds the cost of the high-priced premium to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to the lender.

44.     The actions and practices described above are unconscionable and undertaken in bad faith with the sole objective to maximize profits.  Borrowers who for whatever reason have stopped paying for insurance or are under-insured on mortgaged property are charged hyper- inflated and illegitimate noncompetitive amounts for force-placed insurance.  These charges are inflated to include undisclosed kickbacks to the Defendants or their affiliates (who, as described above, perform little to no functions related to the force-placement of the individual policies), as well as the cost of captive reinsurance arrangements, and discounted administrative services.

45.     Borrowers have no say in the selection of the force-placed insurance carrier or the terms of the force-placed insurance policies.  Force-placed policies are commercial insurance policies and their terms are determined by the servicer - Ocwen, and the insurer - the Assurant Defendants.

46.     Plaintiff here does not challenge Ocwen's right to force place insurance in many instances.  He challenges Defendants' manipulation of the force-placed insurance market with an eye toward artificially inflating premiums and placing unnecessary coverage, which Ocwen purchases from the Assurant Defendants and then chooses to pass on to the borrower. Servicers, like Ocwen, are financially motivated to utilize the insurer, like the Assurant Defendants, that offers it the best financial benefit in the terms of "commissions," direct payments, discounted tracking services, or ceded reinsurance premiums.  In this instance the servicer rejected Plaintiff's in place home owners policy with Farmers Insurance with no legal basis. This action is brought to  put  an end  to Defendants' exclusive, collusive, and uncompetitive arrangements, and to recover for Plaintiff  the  excess  amounts  charged to him  beyond  the  true cost of insurance coverage plus exemplary damages.

**Plaintiff Rizalde Santos**

47.     Plaintiff,  R i z a l d e  S a n t o s , obtained a mortgage loan through Homeward Residential, Inc., and American Home Mortgage Servicing, Inc. which was secured by a first trust deed on the subject real property.

48.     On March 1, 2013, the servicing rights for Mr. Santos' loan were transferred to   Ocwen Loan Servicing including the right to force-place insurance in accordance with     Mr. Santos' mortgage contract.

49.     Since the inception of his mortgage, Mr. Santos had maintained voluntary insurance through payments directly to a independent insurance company, Farmers Insurance.

50.     In or around the time that the servicing of Rizalde Santos mortgage loan was being transferred to Ocwen, and unbeknownst to him, Mr. Santos voluntary insurance was rejected by OCWEN and an Escrow account was instated to provide for force-insurance payments by Mr. Santos.

51.     OCWEN thereafter removed the funds periodically for their force-insurance.

52.     Mr. Santos' mortgage agreement includes a provision that states as follows:

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  The insurance shall be maintained in the amounts … and for the periods that Lender requires.

\*\*\*

If Borrower fails to maintain any of the coverage's described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability, and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.   Any amounts disbursed by Lender under this Section 5 shall become additional debt of the Borrower secured by this Security Instrument ….

53.     Thereafter, Ocwen, through its exclusive relationship with Assurant, and ASIC, force-placed an insurance policy on Mr. Santos and deducted from his escrow account more than $6,875.00 for the annual force-placed insurance premium.

54.     Rizalde Santos was charged for and paid amounts for force-placed coverage in connection with the policy that Ocwen placed on his property. At no time did any Defendant disclose to Mr. Santos that the amounts charged his covered kickbacks to Ocwen, reinsurance profits, bundled administrative costs, below-cost services, or any of the other impermissible charges described in this complaint.

## <u>COUNT I</u> <u>BREACH OF CONTRACT</u>
### <u>(against Ocwen)</u>

55.     Plaintiff, R i z a l d e   S a n t o s re-alleges and incorporates paragraphs 1-54, above as if fully set forth herein and further alleges as follows.

56.     Plaintiff's mortgage is owned and serviced by Ocwen, previously serviced by Homeward Residential, Inc. aka American Home Mortgage Servicing.

57.     Plaintiff's mortgage is written on uniform mortgage forms and contains force-placed insurance requirements and its placement by Ocwen.  The force-placed provisions from Plaintiff's mortgage are set forth above in paragraph fifty-four.

58.     Plaintiff's mortgage requires that he maintain insurance on his property and provides that if he fails to do so, then the lender or servicer may obtain insurance

coverage to protect its interest in the property, "force place" the coverage, and charge the borrower the cost. (See Attached as **Exhibit 4**)

59.     Ocwen charges borrowers amounts for force-placed insurance that include unearned "commissions" or kickbacks, reinsurance premiums, as well as discounted administrative, servicing, and other impermissible costs.  The costs are not costs of coverage, and are not applied to protecting Ocwen's rights or risk in the collateral for borrowers' mortgage loans.  Ocwen breached the mortgage agreements by, among other things, charging Plaintiff the amounts beyond the actual cost of coverage.

60.     Ocwen has also breached Plaintiff's mortgage agreements by charging Plaintiff for excess and unnecessary force-placed insurance coverage, including retroactive coverage, as such coverage does not protect Ocwen's rights in their collateral or cover their risk.

61.     As a direct, proximate, and legal result of the aforementioned breaches of the covenants and conditions, plaintiff and servicer, Homeward Residential, Inc, aka, American Home Mortgage Servicing, Inc., here to refer to as American Home Servicing, Inc, made an oral agreement confirmed by approval of a chapter 13 plan on August 28, 2012 without objection (See attached **Exhibits 7 and 9**) incorporated herein by reference as if fully set forth herein. Plaintiff agreed to pay the home owners insurance, and defendants, American Home Mortgage Servicing, Ocwen, and Wells Fargo bank National Trust Association agreed to accept the amount of $2181.00 per month as full payment for the obligation for the promissory note secured by the first deed of trust for the resident of 4558 Silva Ave., San Jose, CA. Plaintiff completely performed all conditions and covenants of the agreement by paying $2,181.00 per month and by paying the homeowners insurance directly to Farmers Insurance exchange, (See **Exhibit 6**) attached here to incorporated herein by reference as if set fully set forth herein. Defendant, Ocwen and Wellsfargo, failed to comply with the agreement and breached the agreement by changing the agreed upon sum of $2,181.00 to $5,424.24. The breach of a condition is a breach of the contract between Plaintiff and Defendants, Ocwen, American Home Services, and  Wells Fargo Bank National Trust Association. Plaintiff has suffered damages (see attached **Exhibit 8**) attached here to incorporated herein by reference as is set fully set forth herein. Defendants, Ocwen and Wells Fargo Bank National Trust Association received and accepted $2,181.00 per month but failed to honor their agreement with plaintiff.

62.     Plaintiff has suffered damages as a result of defendants, American Home Mortgage Servicing, Ocwen's, and Wells Fargo Bank National trust Association breaches contract in the amount of not less than $51,891.84.

**WHEREFORE**, Plaintiff, Rizalde Santos , seeks compensatory damages resulting from Ocwen's breach of contract, as well as injunctive relief preventing foreclosure pursuant to CCP §2924 et seq.  Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (against Ocwen)

63.  Plaintiff, Rizalde Santos, re-alleges and incorporates paragraphs 1-62, above as if fully set forth herein and further alleges as follows.

64.  A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

65.  Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to  act capriciously to contravene the reasonable contractual expectations of the other party.

66.  Plaintiff's mortgage contracts allow Ocwen to force place insurance coverage on the borrower in the event of a lapse in coverage, but do not define standards for selecting an insurer or procuring an insurance policy.

67.  Ocwen is afforded substantial discretion in force-placing insurance coverage.  It is permitted to unilaterally choose the company from which it purchases force-placed insurance and negotiate any price for the coverage it procures.  Servicers, like Ocwen have an obligation to exercise the discretion afforded them in good faith, and not capriciously or in bad faith.  Plaintiff does not seek to vary the express terms of the mortgage contract, but only to insure that the Defendants exercise their discretion in good faith.

68.  Ocwen breached the implied covenant of good faith and fair dealing by, among other things:

(a)  Manipulating the force-placed insurance market by selecting insurers (here, Assurant and its affiliates) that will artificially inflate premiums to include kickbacks to Ocwen or its affiliates and issue excess insurance coverage not necessary to cover Ocwen's risk, and by failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby insurance coverage is routinely purchased from Assurant and its affiliates without seeking a competitive price;

(b)  Exercising their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting force-placed insurance policies with artificially inflated premiums to maximize their own profits;

(c)   Assessing inflated and unnecessary insurance policy charges against Plaintiff and misrepresenting the reason for the cost of the policies;

(d)   Allowing Ocwen or its affiliates to collect a percentage of the premiums charged to Plaintiff as a kickback and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e)   Charging Plaintiff for commissions when the insurance is prearranged and no commission is due;

(f)   Charging Plaintiff the costs of having the vendor perform its obligation of administering its mortgage portfolio, which is not properly chargeable to Plaintiff;

(g)   Force placing insurance coverage in excess of what is required by law or borrowers' mortgage agreements;

(h)   Force placing insurance coverage in excess of that required to cover the lender's interest in the property, or the balance owed on the loan; and

(i)   Charging Plaintiff an inflated charge for the force-placed insurance due to direct payments from the Assurant Defendants or the captive reinsurance arrangement.

69.   As a direct, proximate, and legal result of the aforementioned breaches of the covenants and conditions, plaintiff and servicer, Homeward Residential, Inc, aka, American Home Mortgage Servicing, Inc., here to refer to as American Home Servicing, Inc, made an oral agreement confirmed by approval of a chapter 13 plan without objection by defendants and each of them (See attached **Exhibit 7 and 9**) incorporated herein by reference as if fully set forth herein. Plaintiff agreed to pay the home owners insurance, and defendants, American Home Mortgage Servicing, Ocwen, and Wells Fargo Bank National Trust Association agreed to accept the amount of $2181.00 per month as full   payment for the obligation for the promissory note secured by the first deed of trust for the resident of 4558 Silva Ave., San Jose, CA. Plaintiff completely performed the   agreement by paying $2,181.00 per month and by paying the homeowners insurance directly to Farmers Insurance exchange, (See **Exhibit 6**) attached hereto and incorporated herein by reference as if set fully set forth herein. Defendant, Ocwen and Wells Fargo, failed to comply with the agreement and breached the agreement by changing the agreed upon sum of $2,181.00 to $5,424.24. The breach of a condition is a breach of the contract and court order between Plaintiff and Defendants, Ocwen, American Home Services, and Wells Fargo Bank National Trust Association. Plaintiff  has suffered damages (see attached **Exhibit 8**) attached here to incorporated herein by reference as is set fully set forth herein. Defendants, Ocwen and Wells Fargo Bank National Trust Association received and accepted $2,181.00 per month but failed to honor their agreement with plaintiff.

**WHEREFORE**, Plaintiff Rizalde Santos, seeks a judicial declaration that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing.   Plaintiff also seeks compensatory damages resulting from Ocwen's breaches of its duties.  Plaintiff also seeks compensatory damages for defendants, Ocwen, American Home Mortgage Servicing, and Wells Fargo Bank National Trust Association for changing the monthly mortgage payment obligation from $2181.00 to $54, 224.24 without changing the order of the court in case: 11-60728. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

### COUNT III UNJUST ENRICHMENT
### (against Ocwen)[8]

70.   Plaintiff re-alleges and incorporates paragraphs 1-69 above as if fully set forth herein and further alleges as follows.

71.   Ocwen and/or its affiliates received from Plaintiff benefits, in the form of funds for inflated insurance premiums related to force-placed insurance policies, unwarranted kickbacks and commissions, captive reinsurance arrangements, and subsidized loan servicing costs.

72.   Ocwen entered into an agreement whereby the insurance vendor—here, Assurant's subsidiaries, including American Security—would provide force-placed insurance policies to Ocwen for the portfolio of loans monitored on behalf of Ocwen. Ocwen would then charge Plaintiff for the force-placed insurance that had been artificially inflated to include costs not properly chargeable to the borrower.  The force-placed policy imposed on Plaintiff were therefore far more expensive than those available to borrowers in the open market that provide even more coverage.

73.   Ocwen also collected premiums on force-placed policies that provided coverage in excess of that required by law or the Plaintiff's mortgage agreement, and in excess of that required to protect the lender's interest in its collateral.

74.   The Assurant Defendants paid and collected significant monies in premiums, kickbacks, commissions, and reinsurance tied directly to the cost of the force-placed insurance premium (as a percentage).  Commissions or kickbacks were paid directly to Ocwen and/or its affiliates in order to be able to exclusively provide force-placed insurance policies.  The Assurant Defendants were mere conduits for the delivery of the kickbacks, "commissions," and other charges to Ocwen and/or its affiliates.

---

[8] Plaintiff pleads his unjust enrichment claim against Ocwen in the alternative to their contractual claims against it.

75.  These payments directly benefitted Ocwen and/or its affiliates and were taken to the detriment of Plaintiff.   The kickbacks and commissions, reinsurance arrangements, and subsidized costs were subsumed into the price of the insurance premium and ultimately paid by the borrower.   Therefore, Ocwen had the incentive to charge and collect unreasonably inflated prices for the force-placed policy.

76.  Further, Ocwen received financial benefits in the form of increased interest income, duplicative insurance based upon the Lender Loss Payable Endorsement or the Standard Mortgage Clause, and/or "soft-dollar" credits.

77.  As a result, Plaintiff has conferred a benefit on Ocwen.

78.  Ocwen had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

79.  Ocwen will be unjustly enriched if it is allowed to retain the aforementioned benefits, and Plaintiff is entitled to recover the amount by which Ocwen was unjustly enriched at his expense.

**WHEREFORE**, Plaintiff, demands an award against Ocwen in the amounts by which it has been unjustly enriched at Plaintiff's expense, and such other relief as this Court deems just and proper.

<u>**COUNT IV UNJUST ENRICHMENT**</u>
<u>**(against Assurant and American Security)**</u>

80.  Plaintiff re-alleges and incorporates paragraphs 1-79 above as if fully set forth herein and further alleges as follows.

81.  The Assurant Defendants received from Plaintiff benefits in the form of funds for insurance premiums related to force-placed insurance policies.

82.  The Assurant Defendants received below-cost payments from Ocwen for providing tracking services but included the entire cost of that tracking service in the premiums for force-placed insurance that were ultimately charged by Ocwen to the Plaintiff.  See attached schedule of charges and payment as **Exhibit 4** The Assurant Defendants knew that the amounts for the force-placed insurance would be ultimately charged to the borrower and passed through to them but did not reduce the charges by the amounts paid to them from Ocwen for the tracking services.   Thus, the Assurant Defendants were unjustly enriched.

83.  The Assurant Defendants paid significant monies to Ocwen in kickbacks, commissions, and reinsurance tied directly to the cost of the force-placed insurance premium (as a percentage).   Commissions or kickbacks were paid directly to Ocwen in order to be able to exclusively provide force-placed insurance policies and receive the corresponding insurance premiums.

84.     Ocwen also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' mortgage agreement, and in excess of that required to protect the lender's interest in its collateral.

85.     Ocwen acted as a mere conduit for the delivery of insurance premiums to the Assurant Defendants.

86.     As a result, Plaintiff and the Class have conferred a benefit on the Assurant Defendants.

87.     These Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

88.     These Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which these Defendants were unjustly enriched at his or her expense.

89.     Plaintiff paid all the homeowners premiums directly to Farmers Insurance exchange. (See Exhibit 6).

    **WHEREFORE**, Plaintiff, demands an award against the Assurant Defendants in the amounts by which the Defendants have been unjustly enriched at Plaintiff's expense, and such other relief as this Court deems just and proper including exemplary damages.

### COUNT V VIOLATION OF THE CALIFORNIA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (against defendants and each of them)

90.     Plaintiff, Mr. Santos, re-alleges and incorporates paragraphs 1-89 above as if fully set forth herein and further alleges as follows.

91.     Defendants engaged in unfair competition in violation of the California Business and Professions Code §17200, *et seq*., including but not limited to, one or more unlawful, unfair or fraudulent business acts or practices.

92.     Ocwen has engaged in, and continues to engage in, unconscionable acts or practices and has engaged in unfair or deceptive acts in the conduct of its trade and/or commerce in the State of California.

93.     The policies, acts, and practices alleged herein were intended to result and did result in the payment of inflated charges for force-placed insurance policies by the above-named Plaintiff, which in turn were intended to generate unlawful or unfair compensation for Ocwen.

94.    Specifically, Ocwen had an exclusive relationship with its vendor and preferred insurance carrier, Assurant and its affiliates, whereby it would pay unreasonable and inflated premiums for force-placed insurance policies, charge that amount to Plaintiff, and then receive compensation through kickbacks, discounted services, or captive reinsurance arrangements.

95.    Ocwen's conduct of charging inflated amounts for their force-placed insurance to Plaintiff violates California B&P Code and was conceived, devised, planned, implemented, approved, and executed within the State of California, which has an interest in prohibiting violations of California B&P Code.

96.    Ocwen is not a bank or savings and loan association regulated by the California Division of Financial Institutions of the Department of Business Oversight.  Further, it is not a bank or savings and loan association regulated by federal agencies.

97.    Plaintiff has sustained damages as a direct and proximate result of Ocwen's unfair and unconscionable practices.

98.    Plaintiff has suffered and will continue to suffer irreparable harm if these Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

    **WHEREFORE** Plaintiff, Rizalde Santos, demands judgment against Ocwen for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT VI TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (against Assurant and ASIC)

99.    Plaintiff, R i z a l d e  S a n t o s , re-alleges and incorporates paragraphs 1-98, above as if fully set forth herein and further alleges as follows.

100.    Plaintiff has advantageous business and contractual relationships with Ocwen pursuant to the mortgage contract. Plaintiff has legal rights under these mortgage contracts.  For example, Plaintiff has a right not to be charged exorbitant charges in bad faith for forced-place insurance.

101.    Assurant and its subsidiaries, including ASIC, have knowledge of the mortgage contracts and the advantageous business and contractual relationships between Plaintiff and Ocwen.  Assurant and ASIC are not parties to the mortgage contracts, nor are they third-party beneficiaries of the mortgage contracts.  Further, Assurant and ASIC do not have any beneficial or economic interest in the mortgage contracts.

102.    Assurant and ASIC intentionally and unjustifiably interfered with Plaintiff's rights under the mortgage contracts, as described above, by, *inter alia*, entering into an exclusive relationship with Ocwen and its affiliates, whereby they provide compensation

(kickbacks, reinsurance, and low cost services) to Ocwen in exchange for the exclusive right to force-place inflated and unnecessary premiums which are purposefully and knowingly charged to Plaintiff.

103.   Plaintiff has been damaged as a result of Assurant's and ASIC's interference with their mortgage contracts by being charged bad faith, exorbitant, and illegal charges for force-placed insurance in contravention of Plaintiff's rights under the mortgage.

**WHEREFORE**, Plaintiff Rizalde Santos, seeks a judgment in his favor against the Assurant Defendants for the actual damages suffered by them as a result of their tortuous interference.   Plaintiff also seeks all costs of litigating this action, including attorneys' fees.

## COUNT VII BREACH OF FIDUCIARY DUTY
### (against Ocwen)

104.   Plaintiff, R i z a l d e   S a n t o s , re-alleges and incorporates paragraphs 1-103, above as if fully set forth herein and further alleges as follows.

105.   Ocwen holds funds in escrow on behalf of borrowers whose mortgages it services. These funds are designated for the purpose of paying insurance premiums as they come due, and any excess funds are to be returned to Plaintiff under the terms of the mortgage agreements.

106.   Ocwen is in a fiduciary relationship with Plaintiff, Ocwen receives a greater economic benefit from these transactions than they would from a typical escrow transaction. Specifically, the debtor-creditor relationship transformed into a fiduciary relationship when Ocwen took it upon itself to manage borrowers' escrow account and then withdrew money from borrowers' escrow account for force-placed insurance charges, not properly chargeable to the borrower.   Ocwen violated its fiduciary duties when it arranged to receive unlawful kickbacks or other compensation under the kickback scheme, which is clearly a greater economic benefit than what was contemplated under the mortgage.

107.   Ocwen breached its fiduciary duties to Plaintiff by: (1) not acting in borrowers' best interest when it profited from force-placed insurance policies that were purchased using escrow funds it held for the benefit of Plaintiff at the expense of Plaintiff; and (2) not disclosing the kickback scheme to Plaintiff.

108.   These actions were undertaken by defendants, American Homeward Services, Ocwen, and Wells Fargo Bank National Trust Association in bad faith for its own benefit and were not intended to benefit Plaintiff.

109.   As a direct result of Ocwen's actions and subversion of Plaintiff's interest to its own in reaping extravagant and outrageous fees, Plaintiff suffered injury in the form of unnecessary and inflated escrow charges and a loss of funds from his escrow account.

WHEREFORE, Plaintiff is entitled to damages for Ocwen's breaches of its fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff is entitled to punitive damages because Ocwen acted in bad faith in deliberate or reckless disregard of both their rights and Ocwen's obligation to hold their escrow funds in trust.

## COUNT VIII VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)
### (Plaintiff against All Defendants)

110.    Plaintiff re-alleges and incorporates paragraphs 1-109 of this complaint as if fully set forth herein.

111.    At all relevant times, Defendants were employed by and associated with an illegal enterprise, and conducted and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud, all in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

112.    The RICO enterprise engaged in and the activities of which affected interstate and foreign commerce, was comprised of an association in fact of entities and individuals that included Ocwen, Assurant and ASIC.

113.    The members of the RICO enterprise had a common purpose: to increase and maximize their revenues by forcing Plaintiff to pay unreasonably high charges for force-placed insurance through a scheme that inflated the premiums to cover kickbacks and expenses associated with monitoring Ocwen's entire loan portfolio. Defendants shared the bounty of their enterprise, i.e., by sharing the premiums generated by the joint scheme.

114.    The RICO enterprise functioned over a period of years as a continuing unit and maintained an ascertainable structure separate and distinct from the pattern of racketeering activity.

115.    Ocwen, Assurant, and ASIC conducted and participated in the affairs of this RICO enterprise through a pattern of racketeering activity that lasted more than one year, at a minimum, and that consisted of numerous and repeated violations of federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign wire or mail facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

116.    Assurant and ASIC, with the approval of Ocwen and on Ocwen letterhead, also sent Plaintiff force-placed insurance form letters stating that Ocwen would purchase the required coverage and charge the borrower the "cost of the insurance." In making these statements, Defendants knowingly and intentionally fostered the mistaken impression that the force-placed insurance premiums that Plaintiff was charged represented the cost of the policies when in fact such premiums cost more because they were inflated to include

kickbacks, reinsurance profits, discounts, or subsidized costs returned to Ocwen or its affiliates.

117.     For the purpose of executing the scheme to defraud, Defendants sent, mailed, and transmitted, or caused to be sent, mailed, or transmitted, in interstate or foreign commerce numerous materials, including but not limited to the notices and letters described  above informing Plaintiff that they could charge Plaintiff unreasonably high force-placed insurance premiums. Defendants also transferred sums among themselves, including but not limited to kickbacks, in furtherance of their scheme to defraud Plaintiff, in violation of the wire fraud statutes.

118.     By reason and as a result of Defendants' conduct and participation in the racketeering activity alleged herein, Defendants have caused damages to Plaintiff in the form of unreasonably high force-placed insurance premiums.

         **WHEREFORE**, Plaintiff seeks compensatory and treble damages, and attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

## COUNT IX
## Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)
## (Plaintiff against all Defendants)

119.     Plaintiff re-alleges and incorporates paragraphs 1-118 of this complaint as if fully set forth herein.  Plaintiff further alleges as follows.

120.     At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(d).  Defendants agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

121.     Defendants agreed that ASIC and Assurant would be Ocwen's exclusive force- placed insurance providers and would extract the unreasonably high premiums from Ocwen's customers.  Defendants also agreed that the Assurant Defendants would pay kickbacks to Ocwen or its affiliates.

122.     Ocwen affiliates pass much of the profits from this scheme to Ocwen.

123.     ASIC passes much of its profits from this scheme to Assurant.

124.     Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

125.     As a result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff suffered damages in the form of unreasonably high force-placed insurance premiums.

**WHEREFORE,** Plaintiff seeks compensatory and treble damages, and attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

## COUNT X
## Violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(f)
## (Plaintiff against OCWEN)

126.    Plaintiff re-alleges and incorporates paragraphs 1-125 of this complaint as if fully set forth herein.

127.    Plaintiff, Rizalde Santos, through his counsel dually served a Qualified Real Estate Settlement Procedures Act (RESPA) notice on Defendant OCWEN on at least two occasions and most recently on August 16, 2014 and August 5, 2015, (See **Exhibits 1 and 2).**

128.    Defendant, OCWEN did not acknowledge or respond to Plaintiffs Qualified RESPA demand, a violation of 12 U.S.C. § 2605(e) which states that an acknowledgement of receipt of the Qualified RESPA must be made within 5 days of the servicers receipt and a response to the request within 20 days of the demand and did not respond with any documentation at any time.

129.    The Plaintiff was reliant on the response to the RESPA request for the reason that he needed the information to apply for loan modification. The plaintiff had applied for a loan modification pursuant to executive directives of HAMP1 And HAMP 2 as well as keep your Home California program to pay arrearages . (See **Exhibits 1 and 2**)

130.    No documents were received responsive to the demand including but not limited to:

   a.    All executed, recordable and "non-recordable" assignments associated with the loan including, but not limited to assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of our client's mortgage, deed of trust, promissory note or other document that secures payment by our client to the obligation in this account from the inception of the loan to the present date.

   b.    All documents representing payments, debits and credits from September 2011 to present

   c.    Certified Copies of the front and back of the Mortgage Deed of Trust and promissory note with all endorsements, affixed or un-affixed allonges, and assignments whether recorded or not.

   d.    True and correct copies of canceled checks, wire transmittals or other evidence of payment for each assignment of the promissory note.

e.      All executed, recordable and "non-recordable" assignments associated with the loan including, but not limited to assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of our client's mortgage, deed of trust, promissory note or other document that secures payment by our client to the obligation in this account from the inception of the loan to the present date.

f.      All records, electronic or otherwise, of assignments of the mortgage, deed of trust, promissory note, or servicing rights to our client's mortgage or deed of trust.

g.      All escrow analyses conducted on the account from the inception of the loan until the date of this letter

131.   Further all questions in the RESPA demand were ignored as no writing addressing any of the requests for answers in the RESPA was ever provided to Plaintiff, Rizalde Santos or his counsel.

**WHEREFORE,** Plaintiff seeks actual damages of not less than $160,618.05 compensatory and statutory damages of not less than $2,000.00, and attorneys' fees and costs, pursuant to 12 U.S.C. § 2605(f).

## COUNT XI QUIET TITLE
### (Plaintiff against OCWEN)

132.   Plaintiff re-alleges and incorporates paragraphs 1-131 of this complaint as if fully set forth herein.

133.   Plaintiff seeks to Quiet Title on the beneficiary and all assignee's thereof to include Wells Fargo Home Mortgage, LLC and Wells Fargo Bank National Trust Association.

134.   Two Qualified RESPAs were served on the Beneficiaries on the first trust deeds, one on Homeward Loan Servicing on August 16, 2014, initial servicer, and another on the second servicer, OCWEN Loan Servicing, LLC on August 5, 2015. No denial or responses were received by plaintiff to the date filing of this complaint.  At no time did either Homeward Servicing or OCWEN ever deny the loan modification with a denial of the loan modification application. Any foreclosure proceeding will be in violation of Homeowner's Bill of Rights Act pursuant to California Civil Code §§ 2924.17(a), effective January 1, 2013.

135.   At no time was there an original or certified copy of an assignment of promissory note and trust deed from the beneficiary on the first trust deed even though the alleged beneficiary was OCWEN, Wells Fargo Home Mortgage, and Wells Fargo Bank National Trust Association.

136.   Defendants made a series of misrepresentations and seemingly ignored Plaintiff's efforts to obtain documents in response to the Qualified RESPA for the Subject Property.  The lack of

documentation shall prevent a foreclosure due to no verification of the secured interest of the first trust deed.

137. The plaintiff has paid all of the interest accrued on the principal amount of the promissory note and has received no delinquent notices or any defaults on the promissory note.

138. Because the written loan agreement failed to express the intent and understanding of the Plaintiff, under California Civil Code §§1640, *et seq.* and 1689, *et seq.*, the contract for the home loan should be deemed void at its formation ab initio.

**WHEREFORE,** Plaintiff requests the court Quiet Title on Trust Deed document number 18600401 filed in the Santa Clara County Recorder's Office recorded on September 29, 2005. The security interest of beneficial interest for the promissory note even dated is terminated, extinguished and have no further force and effect and that defendants has/have no secured interest in the property adverse to the Plaintiff.

## COUNT XII INJUNCTIVE RELIEF
### (Plaintiff against All Defendants)

139. Plaintiff re-alleges and incorporates paragraphs 1-138 of this complaint as if fully set forth herein.

140. Plaintiffs request this Court to grant injunctive relief against each and every Defendant, and its agents, to prevent sale and/or transfer of the Subject Property to third parties. Plaintiff shall suffer irreparable injury and harm as a result of such a sale and/or transfer.

**WHEREFORE,** Plaintiff requests the Court enjoin all Defendants, and their agents, servants, and employees, and all such persons acting under, in concert with, or for them, from foreclosing, selling, transferring or otherwise encumbering the Subject Real Property.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, demands judgment against Defendants as follows:

(1) Enjoining Defendants from continuing the acts and practices supra;

(2) Awarding damages sustained by Plaintiff as a result of Ocwen's breaches of the subject mortgage contract and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(3) Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff, together with pre-judgment interest;

(4) Awarding Plaintiff costs and disbursements and reasonable allowances for the fees of Plaintiff's counsel and experts, and reimbursement of expenses;

(5)    Awarding  damages,  injunctive  relief, declaratory relief, attorneys' fees, and costs under California B&P Code and Home Owner Bills of Rights Act;

(6)    Awarding damages sustained by Plaintiff as a result of the Assurant Defendants' interference;

(7)    Awarding compensatory and exemplary damages for violation for state and federal law to include violation United States bankruptcy court orders to include but not limited to Wells Fargo Bank National Trust Association to more than double the monthly payment claim all in violation of the court order plan payment for which defendant, American Mortgage Servicing, Ocwen, and Wells Fargo Bank National Trust Association duly received notice.

(8 )    Awarding such other and further relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted by:

_/s/ Dean Lloyd, Esq._____                _March 10, 2016_____

Dean Lloyd, Esq                                Date