E-filed 1/3/2017

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIZALDE SANTOS,<br>        Plaintiff,<br>    v.<br>OCWEN LOAN SERVICING, LLC, et al.,<br>        Defendants. | Case No.16-cv-01197-HRL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 49 |

Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Homeward Residential, Inc. ("Homeward"), move to dismiss the first amended complaint filed by plaintiff Rizalde Santos ("Santos"). Santos's first amended complaint includes claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Real Estate Settlement Procedures Act (RESPA), and quiet title, all related to his mortgage loan. For the reasons explained below, the court grants defendants' motion to dismiss.

## BACKGROUND

Santos resides at 4558 Silva Avenue, in San Jose. Dkt. No. 47, at ¶ 16. This property is subject to a first lien mortgage that Santos obtained from the Option One Mortgage Corporation ("Option One") in 2005. Request for Judicial Notice ("RJN"), Ex. A. The Deed of Trust for the mortgage was assigned to Wells Fargo Bank, N.A., as Trustee, and Wells Fargo is currently the beneficiary under that document. RJN, Exs. B, C. Defendant Homeward, formerly the servicer of the loan, transferred the servicing rights to Ocwen in 2013. Dkt. No. 47, at ¶¶ 10, 17, Ex. 3.

Santos filed for Chapter 13 bankruptcy in 2011. Dkt. No. 47, at ¶ 3. The bankruptcy court approved a Chapter 13 plan in 2012, Dkt. No. 47, Ex. 9; RJN, Exs. D, G, I, and the bankruptcy case closed without a discharge (because Santos had received a discharge in a prior bankruptcy) in

1    April 2016. RJN, Ex. O. As part of the Chapter 13 plan, Santos alleges that he entered into an
2    oral agreement with the defendants' predecessors in which the latter "agreed to receive monthly
3    payments in the amount of $2,181.86 per month to include all principal and interest along with
4    accrued arrearages for the promissory note secured by the first deed of trust," Dkt. No. 47, at ¶¶ 7,
5    26, and Santos "agreed to pay the homeowners insurance," Dkt. No. 47, at ¶ 26. The *written*
6    Chapter 13 plan states that Santos would submit a loan modification application proposing
7    continued payments of $2,181.00 per month. Dkt. No. 47, Ex. 9. The written plan also states that
8    if the loan modification application is denied, "the plan payment terms will revert to the terms
9    provided in the operative loan documents." *Id.* The original loan documents include provisions
10   regarding adjustable interest rates, RJN, Ex. A, as well as a provision making the borrower
11   responsible for maintaining homeowners insurance, Dkt. No. 47, at ¶ 21. Santos submitted a loan
12   modification application in January 2012. Dkt. No. 47, Ex. 7.

13   In 2014, Wells Fargo twice filed notices of mortgage payment changes in Santos's
14   bankruptcy proceeding, documenting increases in the monthly payments due to $5,111.10 and
15   $5,424.24, respectively. RJN, Ex. J, M; Dkt. No. 47, at ¶ 26. Also in 2014, in August, and again
16   in August 2015, Santos served letters, which he alleges constitute qualified RESPA notices, on
17   Ocwen, requesting information to support his loan modification application. Dkt. No. 47, at ¶¶ 34,
18   36. Santos alleges that Ocwen did not respond to either letter. Dkt. No. 47, at ¶ 35.

19   Santos filed this lawsuit in March 2016. Dkt. No. 1. His original complaint included
20   twelve claims. *Id.* After defendants filed a motion to dismiss the original complaint, Santos
21   submitted his opposition a week late, on the date the defendants' reply was due. Dkt. Nos. 30, 31.
22   The magistrate judge then assigned to the case granted the motion to dismiss as unopposed,
23   dismissing all of the claims and denying leave to amend (on the basis that amendment would be
24   futile) for all but four. Dkt. No. 43. Santos timely filed a first amended complaint, alleging the
25   four claims for which the magistrate judge had granted leave to amend. Dkt. No. 47. Santos
26   asserts that the defendants (1) breached the oral agreement referenced above by "changing the
27   agreed upon sum of $2,181.86 to $5,424.24," Dkt. No. 47, at ¶ 26, (2) breached the implied
28   covenant of good faith and fair dealing by accepting the reduced payments and then nevertheless

2

1  increasing the monthly amount due, Dkt. No. 47, at ¶ 31, and (3) violated RESPA by failing to

2  acknowledge or respond to qualified RESPA notices he had sent them, Dkt. No. 47, at ¶¶ 35-36.

3  Santos also moves to quiet title to 4558 Silva Avenue on the grounds that the written loan

4  agreement was not a meeting of the minds and "should be deemed void at its formation." Dkt. No.

5  47, at ¶ 45.

6        Defendants again moved to dismiss each claim. Dkt. No. 49. Their arguments and

7  Santos's responses are discussed in greater detail below, as needed. The parties, all of whom have

8  consented to magistrate judge jurisdiction, appeared for a hearing on this motion on August 30,

9  2016.

## LEGAL STANDARD

11        To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for

12  relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

13  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

14  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

15  556 U.S. 662, 678 (2009). Complaints that merely recite the elements of a claim are insufficient.

16  *Id.* In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as

17  true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul*

18  *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court "need not, however,

19  accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."

20  *Corzine v. Whirlpool Corp.*, No. 15-cv-05764-BLF, 2016 WL 6476172, at *1 (N.D. Cal., Nov. 2,

21  2016) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE

23        Generally, district courts are limited to the materials contained in and attached to the

24  pleadings in ruling on a 12(b)(6) motion. Courts may, however, without turning the motion to

25  dismiss into a motion for summary judgment, take judicial notice of facts that are not subject to

26  reasonable dispute and that are "capable of accurate and ready determination by resort to sources

27  whose accuracy cannot reasonably be questioned," as well as matters of public record. *Roca v.*

28  *Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal., Feb. 1,

United States District Court
Northern District of California

2016) (quoting Fed. R. Evid. 201(b)).

Accompanying their motion to dismiss, defendants filed a request for judicial notice, asking the court to take notice of 24 documents. First, the court takes judicial notice of Exhibits A, B, C, S, T, U, and V,[1] as these are public records of the Santa Clara County Recorder's Office. *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking judicial notice of documents recorded in a county recorder's office). Second, the court takes judicial notice of Exhibits D, E, F, G, H, I, J, K, L, M, N, O, W, and X,[2] as these documents are filings in a bankruptcy court proceeding. *Id.* (taking judicial notice of bankruptcy court filings). Finally, the court takes judicial notice of Documents P, Q, and R,[3] as these documents are prior filings in this action. *In re Sheckard*, 394 B.R. 56, 65-66 (E.D. Pa. 2008) (holding that the bankruptcy court did not err by taking judicial notice of prior docket filings in the same case).

## DISCUSSION

### I. Breach of Contract.

Defendants argue that Santos's breach of contract claim should be dismissed because it is based upon an oral agreement that is unenforceable due to the statute of frauds. In California, real property and mortgage contracts fall within the statute of frauds. Cal. Civ. Code §§ 1624, 2922. To be valid, such contracts must be in writing and signed by the parties against whom they are to

---

[1] Exhibit A: Deed of Trust on the property at 4558 Silva Ave, San Jose, recorded September 29, 2005; Exhibit B: Assignment of Deed of Trust, recorded May 26, 2008; Exhibit C: Assignment of Deed of Trust, recorded February 9, 2011; Exhibit S: Notice of Trustee's Sale, recorded December 12, 2008; Exhibit T: Notice of Default, recorded April 21, 2008; Exhibit U: Notice of Default, recorded September 19, 2011; Exhibit V: Notice of Rescission of Notice of Default, recorded March 7, 2014.

[2] Exhibit D: Chapter 13 Bankruptcy Plan, filed December 5, 2011; Exhibit E: Proof of Claim No. 1-1, filed December 16, 2011; Exhibit F: Plaintiff's Declaration Regarding Pending Loan Modification Application, filed March 22, 2012; Exhibit G: Second Amended Chapter 13 Plan, filed July 6, 2012; Exhibit H: Plaintiff's Amended Declaration Regarding Pending Loan Modification Application, filed July 6, 2012; Exhibit I: Order Confirming Chapter 13 Plan, filed August 28, 2012; Exhibit J: Notice of Mortgage Payment Change, filed April 4, 2014; Exhibit K: Unconditional Transfer of Proof of Claim No. 1-1, filed August 14, 2014; Exhibit L: Transfer of Claim Other Than For Security, filed August 15, 2014; Exhibit M: Notice of Mortgage Payment Change, filed October 8, 2014; Exhibit N: Chapter 13 Trustee's Final Report and Account, filed February 12, 2016; Exhibit O: Notice of Chapter 13 Case Closed Without Discharge, filed April 1, 2016; Exhibit W: Motion to Modify Chapter 13 Plan, filed August 13, 2013; Exhibit X: Order Confirming Modified Chapter 13 Plan, filed September 19, 2013.

[3] Exhibit P: Santos's original complaint, Dkt. No. 1; Exhibit Q: order granting motion to dismiss original complaint, Dkt. No. 43; Exhibit R: Santos's first amended complaint, Dkt. No. 47.

be enforced. *Secrest v. Sec. Nat'l Mortg. Loan Trust*, 167 Cal. App. 4th 544, 552 (2008). *Modifications* to contracts that fall under the statute of frauds must also be in writing and signed by the parties opposing enforcement. *Id.*; *Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS, 2010 WL 623715, at *7 (C.D. Cal. Feb. 19, 2010) (dismissing breach of contract and breach of covenant of good faith and fair dealing claims with respect to an oral agreement modifying a mortgage because of the contract's failure under the statute of frauds); *Lester v. J.P. Morgan Chase Bank*, No. C 12-05491 LB, 2013 WL 3146790, at *8 (N.D. Cal. June 18, 2013).

Here, the contract at issue is an oral modification to a mortgage contract, in which (Santos alleges) defendants' predecessor agreed to accept reduced monthly payments in exchange for Santos paying homeowners' insurance. Both parties agree that the statute of frauds applies. Thus, the oral modification that forms the basis of Santos's breach of contract and breach of the implied covenant of good faith and fair dealing claims will be invalid as a matter of law unless Santos has alleged facts to support a theory that the oral agreement is enforceable despite the statute of frauds.

Santos's first argument to avoid the statute of frauds is that the oral agreement was supported by additional consideration. Plaintiff relies on California Civil Code Section 1698, which states that written contracts may be modified in writing, by an oral agreement executed by the parties, or by an oral agreement supported by new consideration. If sufficient additional consideration exists, Santos argues, full performance by the promisee can render the agreement executed within the meaning of section 1698.

Plaintiff's argument fails because there are no credible allegations that the oral agreement was supported by new consideration or full performance. Santos argues that the new consideration supporting the oral modification consisted of his homeowner insurance payments and the reduced monthly mortgage payments. Santos, however, alleges that he was obliged to pay both mortgage payments and monthly insurance under the terms of the original mortgage agreement, Dkt. 47, ¶¶21, 24, 26 ("Borrower shall keep the improvements now existing and hereafter erected on the Property insured against loss . . . ,"), so these payments do not constitute additional consideration. The continued monthly mortgage and insurance payments also did not constitute full performance, as Santos has not paid off his loan in full and still has remaining

5

obligations to perform.

Santos's second argument to avoid the statute of frauds is that the oral agreement is enforceable because of promissory estoppel. Promissory estoppel requires the plaintiff to prove four elements: (1) a clear and unambiguous promise, (2) actual reliance by the promisee, (3) reasonable and foreseeable reliance, and (4) an injury to the party asserting estoppel connected to the reliance. *Lawther v. Onewest Bank*, No. C 10-0054 RS, 2010 WL 4936797, at *8 (N.D. Cal. Nov. 30, 2010). The key principle behind promissory estoppel is that "he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which [that person] acted." *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1041 (2010), quoting *Wilson v. Bailey*, 8 Cal. 2d 416, 423 (1937).

The first element of promissory estoppel is a clear and unambiguous promise. To satisfy this element, a promise need only be "definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Id.* at 1045, quoting *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006). Courts only find that no contract exists when the obligations of the parties—and thus breach—cannot be determined. *Id.*

Plaintiff's complaint states that plaintiff and defendants made an oral agreement, in which Santos agreed to pay the homeowner's insurance and a reduced monthly payment amount and defendants agreed to accept the reduced amount as full payment for the mortgage loan obligation. Defendants argue that this promise was ambiguous, as there was no indication that it was intended to be permanent. In fact, they argue, the written Chapter 13 plan expressly stated that if plaintiff's loan modification application were rejected, the payment terms would revert back to those in the original operative loan documents after the bankruptcy concluded. *See* Dkt. 47, Ex. 9.

With respect to the oral agreement, Santos—both in his complaint and at the hearing on this motion—does not state any facts to support his argument that the modification was intended to be permanent. In contrast, his complaint alleges that the modification was intended to last only as long as the Chapter 13 bankruptcy case: "Ocwen breached . . . [b]y agreeing . . . to accept

6

1  $2,181.86 including arrearages as a monthly payment for complete satisfaction of the monthly
2  obligation *during the pendency of the Chapter 13 proceedings*." Dkt. No. 47, at ¶ 31 (emphasis
3  added). Additionally, the written Chapter 13 plan strongly suggests that the modification was
4  intended to be temporary. In short, Santos fails to allege sufficient facts to support an inference
5  that the oral agreement was intended to be permanent. And in the absence of an oral agreement to
6  *permanently* modify the loan, the temporary promise that remains is ambiguous. This temporary
7  promise, contained in the written Chapter 13 plan, states that the loan modification could become
8  permanent *if* the defendants accept Santos's application; but if the application is denied, the terms
9  will revert back to those in the original loan documents. It is not clear how defendants can breach
10 this written promise, as neither acceptance nor rejection of the application would constitute
11 breach.

12 A promise for which breach cannot be determined is not "clear and unambiguous." Since
13 the plaintiff cannot establish this first element of promissory estoppel, plaintiff's attempt to avoid
14 the statute of frauds on a promissory estoppel theory fails.

15 The plaintiff's final argument to avoid the statute of frauds is that the oral agreement is
16 enforceable under the doctrine of equitable estoppel. Equitable estoppel to assert the statute of
17 frauds applies when an unconscionable injury "would result from denying enforcement of a
18 contract after one party has been induced by the other seriously to change his position in reliance
19 on the contract." *Monarco v. Lo Greco*, 35 Cal. 2d 621, 623 (1950). Santos argues that he was
20 induced by defendants' promise to continue making reduced monthly payments. But since he
21 would have been obliged to make these payments whether or not the loan modification application
22 had been accepted, Santos has not been induced "seriously to change his position." Plaintiff's
23 equitable estoppel argument does not succeed.

24 Since Santos cannot avoid the statute of frauds, the statute applies to bar the oral agreement to
25 modify the mortgage contract. The court thus grants the motion to dismiss as to this claim.

26 **II.     Breach of the Covenant of Good Faith and Fair Dealing.**

27 For a plaintiff to successfully establish a claim for a breach of the covenant of good faith
28 and fair dealing, there must be a valid underlying contract. *Lester v. J.P. Morgan Chase Bank*,

7

1  No. C12-05491 LB, 2013 WL 3146790, at *8 (N.D. Cal. June 18, 2013). Since, as explained
2  above, oral modifications to mortgage contracts like the one that forms the basis of this claim are
3  barred by the statute of frauds, and Santos cannot avoid this statute, Santos fails to state a valid
4  claim for breach of the implied covenant of good faith and fair dealing and the court grants the
5  motion to dismiss as to this claim.

### III.   RESPA.

RESPA requires mortgage-loan servicers to respond to Qualified Written Reports ("QWRs") sent by borrowers. To be a QWR, correspondence must satisfy three requirements. First, it must request "information relating to the servicing" of a loan, 12 U.S.C. 2605(e)(1)(A). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. 2605(i)(3). Information relating to servicing does not include facts related to the terms or validity of the original loan. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). Second, to be a QWR, correspondence must include the name and account of the borrower. And third, it must include a statement of the reasons for the borrower's belief "that the account is in error" or provide "sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. 2605(e)(1)(B); *Medrano*, 704 F.3d at 666. The borrower does not need to use magic words to create a QWR; "any reasonably stated written request for account information" can suffice. *Medrano*, 704 F.3d at 666.

The court declines to decide whether Santos has sufficiently alleged that the letters he sent to the defendants were QWRs, as, even assuming that the letters were such reports, the RESPA claim fails to allege actual damages caused by defendants' failure to respond to his letters or statutory damages related to a pattern or practice of non-compliance.

RESPA provides for two types of damages for the failure to respond to a QWR: (1) actual damages "as a result of the failure" to respond, and (2) statutory damages of up to $2,000 in the event the plaintiff can prove a pattern or practice of noncompliance with the statute. 12 U.S.C. § 2605(f). To successfully state a claim for actual damages, the plaintiff must allege "actual,

8

cognizable damages resulting from Defendants' failure to respond to QWRs." *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012). Here, the plaintiff alleges that he "was reliant on the response to the RESPA request for the reason that he needed the information to apply for a loan modification" and seeks compensatory damages of "not less than $160,618.05." Dkt. No. 47, at ¶¶ 36, 38. The plaintiff, however, submitted an application for a loan modification in 2012, before the date of his first QWR (2014). RJN, Exs. F, H; Dkt. No. 47, Exs. 1, 2, 7. Since the application pre-dated the QWRs, defendants' failure to respond to the QWRs cannot have prevented such an application. Plaintiff does not allege any other facts regarding damages caused by the claimed RESPA violations, and he does not allege any specific facts supporting the $160,618.05 sought in relief or explaining how this amount was calculated. Thus, the complaint does not sufficiently allege actual damages resulting from the servicer's failure to respond to the QWRs.

Turning now to statutory damages (available if the plaintiff can prove a pattern or practice of non-compliance with RESPA's requirements), courts have interpreted the phrase "pattern or practice" to mean "a standard or routine way of operating." *Ponds v. Nationstar Mortg., LLC*, No. CV 15-8693-DMG (JPRx), 2016 WL 3360675, at *6 (C.D. Cal. July 3, 2016) (quoting *Lawther v. Onewest Bank*, No. C 10-0054 RS, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010). A single RESPA violation does not constitute a pattern or practice. *Lawther*, 2010 WL 4936797, at *7 (stating that courts "have accepted that as few as three refusals is sufficient" to allege a pattern or practice).

Here, Santos alleges two instances in which the defendants failed to respond to QWRs he sent to them. Two violations, however, do not constitute a "standard or routine way of operating," and do not make up a pattern or practice. *Frase v. U.S. Bank, N.A.*, No. C11-1293JLR, 2012 WL 1658400, at *6 (W.D. Wash. May 11, 2012) (holding that the failure to respond to two QWRS did not "constitute a 'pattern or practice' sufficient to warrant the award of statutory damages . . . ."); *Espinoza v. Recontrust Co., N.A.*, No. 09-CV-1687-IEG (RBB), 2010 WL 2775753, at *4 (S.D. Cal. July 13, 2010) ("A failure to respond to two requests does not state 'a pattern or practice of noncompliance.'"); *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009)

9

(holding that two violations did not constitute a pattern or practice); *In re Maxwell*, 281 B.R. 101, 123 (D. Mass. 2002) ("the Court is unpersuaded that Debtor has established a 'pattern of practice' for purposes of RESPA's statutory damage provision by showing just two violations.").

Santos thus fails to allege sufficient facts to support a claim for either actual or statutory damages, and, as a result, the court grants the motion to dismiss the RESPA claim.

### IV.     Plaintiff's Quiet Title Claim.

Santos does not oppose the motion to dismiss his quiet title claim, but instead requests leave to amend.

For a mortgagor to quiet title to a property encumbered by a debt, he or she must first pay that debt. *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974); *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."). Plaintiff's complaint does not allege full payment of the debt; it only alleges payment of the interest. Dkt. No. 47, at ¶ 44. Thus, as it stands, the quiet title claim cannot succeed as a matter of law, and the court grants the motion to dismiss as to this claim.

### V.     Leave to Amend.

If the court dismisses the plaintiff's complaint, it should grant leave to amend freely when justice so requires. Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may, nevertheless, deny leave to amend if it determines that an amendment would be futile, or when a party repeatedly fails to cure deficiencies. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Here, the complaint has already been dismissed and the plaintiff granted leave to amend once. The First Amended Complaint, however, is substantially the same as the original complaint. Additionally, at the hearing on this motion, when the court asked plaintiff whether there were additional facts to support his theories for avoiding the statute of frauds (e.g., whether the oral agreement was supported by any additional consideration), plaintiff did not provide any such facts.[4] Similarly, when asked about whether there were any actual damages caused by the alleged

---

[4] His argument that improvements made to the house constituted additional consideration were unavailing, as Santos stated no plausible facts supporting an inference that these improvements were part of a bargain with the defendants.

non-compliance with RESPA, plaintiff did not state any specific facts beyond those discussed above. As a result, the court is persuaded that amendment of the first, second, and third claims would be futile and denies leave to amend these claims.

Regarding the quiet title claim, Santos elected not to oppose the motion to dismiss this claim but instead requested leave to amend to allege that he was ready, willing, and able to tender full payment of the debt. Santos, however, had an opportunity to amend this claim before, and he had notice of defendants' lack of tender argument from their prior motion to dismiss. *See* Dkt. No. 19, at 12-13. Plaintiff also requests leave to amend this claim to continue to assert that the assignment of the deed of trust to Wells Fargo was fraudulent. *See* Dkt. No. 52; Dkt. No. 47, at ¶¶ 42-43. But the assignments are shown by judicially noticeable documents and recorded by the Santa Clara County Recorder's Office, RJN, Exs. B, C, and Santos does not state any specific facts to support his theory concerning fraudulent assignments. The plaintiff has twice failed to meaningfully oppose a motion to dismiss his quiet title claim,[5] and he has failed to cure its defects. Because of these repeated failures and the deficiencies described above, the court denies leave to amend the quiet title claim.

## CONCLUSION

For the reasons explained above, the defendants' motion to dismiss is granted with respect to all four claims, without leave to amend.

**IT IS SO ORDERED.**

Dated: 12/28/2016

HOWARD R. LLOYD
United States Magistrate Judge

---

[5] Santos's late response to the first motion to dismiss states briefly, in its introduction, that the quiet title claim should not be dismissed, but the response fails to address defendants' arguments as to this claim.

11